EDWARD JOHN ANDERSON, petitioner,

*v.*

VIOLA MARIE ANDERSON, defendant.

[Decided January 8th, 1934.]

*Messrs. Zucker & Shapiro,* for the petitioner.

*Mr. Frank S. Sauer,* for the defendant.

MATTHEWS, A. M.

The petitioner in this case sued for divorce on the ground of desertion, stating in paragraph 4 of his petition:

"The defendant has willfully, continuedly and obstinately refused and refrained from having sexual intercourse with the plaintiff and has steadfastly refused to cohabit with him as his wife and has steadfastly refused to consummate the marriage since October, 1930, and ever since which time and for more than two years last past, defendant has willfully, continuedly and obstinately deserted him."

The defendant filed an answer denying the desertion and setting up the further defense that "at the time of the alleged desertion charged against her in the petition [this defendant] was suffering from a psychosis and was incompetent and incapable of forming an intent to desert the petitioner." The defendant also urged the defense of the laches of the petitioner "in that knowing of the fact that the defendant was suffering from a psychosis immediately after the consum-

mation of the marriage in June, 1922, the petitioner resided and lived with the defendant as husband and wife from that date to October, 1932, and took no action to have the marriage dissolved down to the date of the filing of the petition herein."

The proofs on behalf of petitioner and defendant in this case revealed a period of pre-marital incontinence of approximately three years during which time the parties indulged frequently in a union of the genital organs that did not involve complete penetration but which produced mutual masturbation.

The defendant testified that the reason complete penetration was not indulged in pre-maritally was her fear of pregnancy before marriage.

Immediately after marriage when the complainant attempted a completed sexual relation the defendant according to her own testimony could not allow it because of a fear which she could not describe but which she definitely said was not a fear of pregnancy because she is fond of children and would like to have one of her own.

The defendant further testified that she had no fear of sexual relations similar to those indulged in by the pair pre-maritally, that she even desired such relations and enjoyed the orgasm resulting therefrom.

The defendant further admitted that her husband urged her frequently during the ten years of their married life to allow him to complete the marital act but that on all of these occasions she tried but at the moment of completion she was seized with the same fear. She says she went to a doctor on two occasions and that the doctor told her on the last occasion in March, 1932, that she was physically perfect and that she could have intercourse and should go home and live with her husband.

The evidence revealed that because of the defendant's continued refusal to consummate the marriage the petitioner became "a nervous wreck" and in order to protect his health petitioner left the defendant in November, 1931, and lived

apart in a boarding house until defendant came to him after her examination by the doctor in March, 1932, and promised him if he would return to their home in Grantwood she would fulfill the marital duty. Relying on her promises petitioner returned but all attempts at completed intercourse were unavailing and petitioner finally left the defendant because of the effect of her actions upon his nervous condition and has not resided with her or made any further attempts at intercourse since October, 1932.

The defendant's mother testified that she went with her daughter to a Dr. Logan in October, 1932, after petitioner had left her daughter, the defendant, and that she, defendant's mother, heard Dr. Logan advise the defendant to have real sexual intercourse with her husband because she was physically fit to do so.

From this recital of the testimony it can be seen that the question remaining to be decided in this case is whether this defendant was as alleged in her answer suffering from a psychosis that produced a will removing fear which would have made her refusal to have complete sexual intercourse not an act of her own free will.

In arriving at a conclusion as to this point the court has had the benefit of the mental examination in private of this defendant in the presence of counsel for both sides by two psychiatrists who qualified as such, and also the benefit of the testimony of both of these psychiatrists, Dr. Lewis H. Loeser, who examined and testified on behalf of the petitioner, and Dr. Theodore R. Robie, who examined and testified on behalf of the defendant. Both of these doctors are also medical doctors.

Because of recent developments in the science of psychiatry and its rather general use in recent years to analyze empirically mental states of persons, it has seemed to me fitting that I should state as a rule that fear alone unaccompanied by any antecedent concomitant or previously experienced *post factum* physical pain, is not such a psychosis when experienced over a long period of time as can be considered

will removing, or such a psychosis as would render its possessor incapable of willing or not willing to do an act.

In the instant case the fear or phobia from which this woman is alleged to suffer has been called "a nameless fear" by both psychiatrists. The defendant herself doesn't know what the fear is. She simply states that fear takes possession of her, not during the preliminary acts of mutual contact of the genitalia which she says she not only enjoys but on occasion seeks, not during the orgasm which completes this mutual masturbation of the genitalia, which she also says she enjoys and on occasions seeks, but solely when the petitioner either before or during the acts above mentioned asks or physically attempts penetration beyond the clitoris of the defendant.

It is the reasoned opinion of this court that psychologically, or psychiatrically (which I shall term empirically psychologically) this defendant is selfish, and that her selfishness is born of her satisfaction with the sexual relations which she indulged in pre-maritally and which, as it were, organized her nervous system and her sexual desires in a habit-formed method of sex indulgence. It is inconceivable to me as a psychologist of the old school who has kept abreast of the new psychiatry that a nameless fear of something or some act a person never experienced can destroy that person's will to do or not to do that thing or that act, particularly where that same person invites the happening or doing of that act by pleasurably seeking and enjoying acts that are necessarily antecedent to and consequent upon it.

The proofs in this case negative the idea of mental disease or insanity in this defendant. They clearly show that she is normal in her antecedents and in her everyday life and method of living.

I feel that in informing the conscience of the chancellor and advising his decree in this case I must hold that the alleged psychosis set up in defense of the desertion is nothing more than selfishness masquerading as fear, a selfishness albeit that has by reason of pre-marital incontinence with

the petitioner organized the defendant's nervous system and her sexual desires in a habit-formed method of sex indulgence. To characterize the "nameless fear" disclosed by the evidence in this case as a psychosis that would be will removing would be to approve the abdication of the moral responsibility of this defendant to the sin of selfishness.

The defense of laches set up by the defendant is without merit under the evidence.

I will advise a decree of divorce for the petitioner.